**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| EDWARD HUGHES,<br><br>Plaintiff,<br><br>v.<br><br>JOSHUA BERRY, PETER GLIDDEN, PAN AM RAILWAYS, INC., and CSX TRANSPORTATION, INC.,<br><br>Defendants. | Civil Action No. 1:24-CV-12024-AK |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS**

**ANGEL KELLEY, D.J.**

This is a personal injury action stemming from an August 18, 2021 incident in which Edward Hughes ("Plaintiff"), was struck by a train at a railroad track and suffered permanent injuries. Defendants, Pan Am Railways, Inc. ("PAR") and CSX Transportation, Inc. ("CSXT"), allegedly own the train and the track, and Defendants Joshua Berry ("Berry") and Peter Glidden ("Glidden") were operating the train when the incident occurred (collectively, "Defendants"). Plaintiff alleges Defendants were negligent, grossly negligent, and engaged in willful, wanton, and reckless conduct causing the incident. Defendants oppose and move to dismiss for failure to state a claim. For the reasons below, Defendants' Motion to Dismiss [Dkt. 42] is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

These facts are drawn from the Amended Complaint. [Dkt. 41]. Unless otherwise stated, the facts are undisputed.

**A. Relevant Facts**

On August 18, 2021, Plaintiff was struck by a freight train from behind while walking along the train tracks located behind his residence. At the time, Plaintiff was 17 years, 11 months and 6 days old. Plaintiff claims this section of the tracks was a well-known place for people to walk because it has trees on one side and a river on the other. Several residences in the neighborhood have stairs in their backyards to access the railroad track. CSXT and PAR allegedly owned, controlled, and operated the train that struck Plaintiff, and the railroad track where the incident occurred. At about the same section of the track, at least one minor had previously died due to a train collision.

Defendants, Berry and Glidden, were operating the train when it struck Plaintiff. After seeing Plaintiff on the track, Berry and Glidden blew the horn several times to alert Plaintiff. When Plaintiff did not respond, Berry and Glidden applied the emergency brakes, which reduced the train's speed from 28-29 miles per hour to 0, in 20 seconds. Nonetheless, the train struck Plaintiff. Plaintiff allegedly suffered "permanent personal injuries, incurred substantial medical bills, and expenses, lost wages, lost earning capacity and has been prevented from performing his usual living activities." After the incident, PAR and CSXT tested the train's brakes. Plaintiff alleges the brakes might be faulty and contributed to the train's failure to stop.

At the time of the incident Berry and Glidden were PAR's and CSXT's employees, were under PAR's and CSXT's control and supervision, and operated the train within the scope of their employment. During their employment, both Berry and Glidden were separately involved in prior train collisions that involved the public. PAR and CSXT, however, still permitted them to operate the trains. Plaintiff alleges Berry and Glidden did not receive any training, education or supervision after the prior collision.

### B. Procedural History

On August 6, 2024, Plaintiff filed this action. On September 4, 2024, Plaintiff amended the Complaint and alleged thirteen counts, based on the same facts: negligence, gross negligence, and willful, wanton or reckless conduct against Berry, Glidden, and PAR; vicarious liability against PAR and CSXT; and negligent training and supervision against CSXT.

On September 18, 2024, Defendants moved to dismiss Plaintiff's Amended Complaint. Plaintiff opposed. On July 16, 2025, the Court heard the parties. At the hearing, the Court denied Defendants' Motion to Dismiss without prejudice and allowed Plaintiff to conduct discovery to factually develop his claims, if any.

After discovery, Plaintiff filed a Second Amended Complaint on November 25, 2025. Plaintiff alleges that Berry and Glidden were negligent (Counts 1 and 4), grossly negligent (Counts 2 and 5), and engaged in willful, wanton, and reckless conduct (Counts 3 and 6). Plaintiff also alleges that PAR and CSXT can be held liable for Berry and Glidden's conduct (Counts 7, 8, 11 and 12). Plaintiff also alleges that PAR was negligent, grossly negligent, and engaged in willful, wanton, and reckless conduct (Counts 9, and 10), and that CSXT negligently trained and supervised its employees (Count 13). On December 9, 2025, Defendants again moved to dismiss for failure to state a claim, and Plaintiff opposed on December 18, 2025. This Motion to Dismiss is now before the Court.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Reading the complaint "as a whole," the court must conduct a two-step, context-

specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements. Id. Factual allegations must be accepted as true, while legal conclusions are not entitled to credit. Id. A "court may not disregard properly [pleaded] factual allegations even if . . . actual proof of those facts is improbable." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (citation modified). Second, the court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).

A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez, 640 F.3d at 12. A complaint "does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation modified). A court may not disregard properly pleaded factual allegations even if "actual proof of those facts is improbable." Ocasio-Hernandez, 640 F.3d at 12 (quoting Twombly, 550 U.S. at 556). Rather, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw." Id. at 13. In making that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein, and facts susceptible to judicial notice. Haley, 657 F.3d at 46. Dismissal is appropriate when the complaint fails to allege a "plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 559).

## III. DISCUSSION

The Court begins by addressing whether the Child Trespasser Statute applies to the

present case. Then, the Court will turn to Plaintiff's allegations of vicarious liability and that Defendants engaged in willful, wanton and reckless conduct.

**A. Negligence and Gross Negligence Claims**

Because the parties agree that Plaintiff was a trespasser, the Court starts by determining whether the Child Trespasser Statute applies here. If the Child Trespasser Statute applies, Defendants could be held liable for negligence or gross negligence. M.G.L. c. 231, § 85Q. However, the statute only applies if Plaintiff, at the time of the incident, was a child, who because of his youth, could not "discover the condition or realize the risk involved in intermeddling with [] or in coming within the area made dangerous by" the railroad track. Id. Age, by itself, however, does not suffice to invoke the Child Trespasser Statute. See Gaines v. General Motors Corp., 789 F. Supp. 38, 41 (D. Mass. 1991) (age is a relevant, but not a dispositive, fact to determine, as a matter of law, a child's ability to realize risk for the purposes of the Child Trespasser Statute). The statute requires that the child fail to appreciate the danger "because of his youth." Id. at 40. At the time of the incident, Plaintiff was nearly eighteen years old. He grew up in the neighborhood adjacent to the railroad track and alleges at least one death occurred at the same section of the track. Aside from simply noting his age, Plaintiff does not allege any facts that show his age caused his ignorance of the risk in walking along the railroad track. Plaintiff, thus, does not sufficiently allege he qualifies as a child trespasser.

Given that Plaintiff is a trespasser and does not qualify as a child trespasser under the Child Trespasser Statute, Defendants may be held liable only if their conduct was willful, wanton or reckless. Silva v. United States, No. 99-CV-102221-PBS, 2000 WL 110248 at *5 (D. Mass. Jan. 24, 2000); Gayyean v. City of Lowell, 167 N.E.3d 911, 2021 WL 1604334 at *1 (2021).

Counts 1, 2, 4, and 5 allege negligence and gross negligence against Berry and Glidden.

Counts 9, 10 (in part), and 13 (in part) allege negligence and gross negligence against PAR and CSXT. Because Plaintiff was a trespasser, and the Child Trespasser Statute does not apply, Defendants only owed the duty to refrain from willful, wanton, or reckless conduct. Even if Defendants' conduct meets negligence or gross negligence standards, it would still be insufficient to find them liable. As a result, the Court dismisses Counts 1, 2, 4, and 5 that allege negligence and gross negligence against Berry and Glidden. Similarly, Counts 9, 10, and 13,[1] to the extent they allege negligence and gross negligence against PAR and CSXT, are dismissed.

**B. Willful, Wanton and Reckless Conduct**

Defendants owed Plaintiff a duty to refrain from willful, wanton, or reckless conduct. "The terms 'wil[l]ful,' 'wanton,' and 'reckless' are often used interchangeably." Sarro v. Philip Morris USA Inc., 857 F. Supp. 2d 182, 185 n.2 (D. Mass. 2012). Willfulness is relevant where "defendants had an actual intention to cause harm." Beausoleil v. Mass. Bay Transp. Auth., 138 F. Supp. 2d 189, 204 (D. Mass. 2001) (citing Sandler v. Commonwealth., 644 N.E.2d 641, 642 (1995)). The "wanton or reckless" conduct, in essence, is: "intentional conduct, by way either of commission or of omission where there is a duty to act, which conduct involves a high degree of likelihood that substantial harm will result to another." Ryan v. Newark Grp., Inc., 814 F. Supp. 3d 24, 40 (D. Mass. 2025) (quoting Commonwealth v. Catalina, 556 N.E.2d 973, 979 (1990)). For willful, wanton, or reckless conduct, Plaintiff must show Defendants' "intentional or

[1] Count 13 also alleges CSXT negligently trained and supervised Berry and Glidden. To hold an employer responsible for negligent training and supervision, "a plaintiff must show that the 'employer [became] aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge or reassignment.'" Galego v. City of Fall River, No. 22-CV-12243-MPK, 2023 WL 8039295, at *11 (D. Mass. 2023) (quoting Helfman v. Northeastern Univ., 149 N.E.3d 758, 775 (Mass. 2020)) (cleaned-up). Plaintiff, however, does not allege whether Berry and Glidden were unfit to operate the train, and, if so, whether CSXT was aware of their unfitness. Instead, Plaintiff makes conclusory allegations that CSXT failed to: hire people competent to perform the responsibilities of the company; allocate adequate services to do its job(s); train its workers to do their jobs; supervise its workers; retain workers fit to perform the tasks expected of the company. These allegations fail to satisfy the plausibility threshold to survive dismissal.

unreasonable disregard of a risk . . . of death or grave bodily injury [that] must be known or reasonably apparent, [] [where] the harm must be a probable consequence of the defendant's election to run that risk or of his failure reasonably to recognize it." Ali v. City of Bos., 804 N.E.2d 927, 932 (2004) (quoting Sandler, 644 N.E.2d at 643).

To assess a defendant's knowledge of risk, courts consider "either a subjective or an objective standard." Sarro, 857 F. Supp. 2d at 185 (quoting Boyd v. Nat'l R.R. Passenger Corp., 845 N.E.2d 356, 362 (2006)). Under a subjective standard, "the actor knows, or has reason to know, of facts creating a high degree of risk of physical harm to another, and deliberately proceeds to act, or fails to act, with conscious disregard for or indifference to that risk." Id. (citing Boyd, 845 N.E.2d at 363). Under an objective standard, "the actor knows, or has reason to know, of facts creating a high degree of risk of physical harm to another, but unreasonably fails to realize the high degree of risk involved." Id. Under either standard, the risk must be unreasonable and defendant's conduct must involve a probability of harm "substantially exceeding" that required to establish negligence. Id.

The willful, wanton, or reckless conduct thus "involves a degree of risk and a voluntary taking of that risk so marked that, compared to negligence, there is not just a difference in degree but also a difference in kind." Sandler, 644 N.E.2d at 644; see also Manning v. Nobile, 582 N.E.2d 942, 946-97 (1991). The defendants' knowledge of risk should be sufficient to support a high probability of harm, as opposed to a mere chance of harm. See Ryan v. Newark Grp., Inc., 814 F. Supp. 3d 78, 114 (D. Mass. 2025).

**1. Counts 3 and 6**

Plaintiff plausibly alleges that Berry and Glidden engaged in willful, wanton, or reckless conduct. Counts 3 and 6 allege Berry and Glidden acted willfully, wantonly and recklessly by

failing to: maintain a proper lookout, maintain a proper speed, adhere to all company policies, adhere to all federal, state, and local guidelines, and operate the train in a reasonably safe manner. Additionally, Plaintiff alleges that Berry and Glidden had adequate time to stop before the collision. Had they applied the emergency brakes first, the train would have allegedly stopped before colliding with Plaintiff. Nonetheless, Berry and Glidden allegedly chose to blow the horn first and continued to do so despite seeing no response from Plaintiff.

As train operators, and being involved in prior collisions, Berry and Glidden knew or had reasons to know the risk of harm to Plaintiff due to their conduct. Yet, they allegedly disregarded the risk. As required for willful, wanton or reckless conduct, Berry and Glidden thus knew or had reasons to know the risk of their conduct and still acted with "intentional or unreasonable disregard of a risk . . . of death or grave bodily injury." Ali, 804 N.E.2d at 932. At this stage, these allegations suffice. Accordingly, Motion to Dismiss Counts 3 and 6, alleging willful, wanton, or reckless conduct against Berry and Glidden, is denied.

**2. Counts 10 and 13 (in part)**

Plaintiff plausibly alleges PAR and CSXT engaged in willful, wanton, or reckless conduct. Counts 10 and 13 allege CSXT and PAR failed to: maintain the railway in a safe condition; prevent predictable injuries; not create hazards; eliminate hazards; guard against known or foreseeable hazards; and warn about unsafe conditions.[2] Plaintiff alleges that at least

---

[2] In addition, Plaintiff alleges PAR and CSXT knew that the railroad track was an attractive nuisance, where children would foreseeably trespass. Plaintiff, however, fails to allege whether the railroad track was an attractive nuisance because of a condition that PAR or CSXT created, or another defect for which either PAR or CSXT owed a duty to remedy. Plaintiff also does not expressly allege if CSXT or PAR owed Plaintiff a duty to warn or remedy any purported danger the railroad track posed. Defendants, however, argue that as railroad track is an open and obvious danger, railroad did not owe Plaintiff, or any other person of ordinary intelligence, a duty to protect from or warn against the dangers of the railroad track. The Court agrees. See also Cohen v. Elephant Rock Beach Club, Inc., 63 F.Supp.3d 130, 146 (D. Mass. 2014) ("Where, as here, 'the only viable theory of negligence' is failure to warn, and not failure to remedy, the question of whether the danger was open and obvious is dispositive."). See Potvin v. Speedway LLC, 264 F. Supp. 3d 337, 344 (D. Mass. 2017), aff'd, 891 F.3d 410 (1st Cir. 2018) ("[A]ssuming that there is a duty of repair or remedy of a dangerous condition, a landowner is 'not obliged to supply a place of

one minor previously died at the same section of the track where Plaintiff was struck. This section of railroad track was allegedly well-known for recreational walks. PAR and CSXT thus allegedly knew of high degree of risk of physical harm on the track where the incident took place. In addition, PAR and CSXT also knew that Berry and Glidden were involved in collisions that involved the public. As alleged, PAR and CSXT, however, did not take any remedial actions to train Berry and Glidden, or to make the track where the incident occurred safe to the foreseeable trespassers like Plaintiff. Therefore, it may reasonably be inferred that PAR and CSXT, despite knowing the risk of harm to Plaintiff, unreasonably or intentionally disregarded the risk by way of omission. Accordingly, Defendant's Motion to Dismiss Counts 10 and 13, to the extent they allege willful, wanton, and reckless conduct against PAR and CSXT, is denied.

### C. Counts 7, 8, 11, and 12: Agency and Vicarious Liability/Respondeat Superior Against PAR and CSXT

In Counts 7 and 11, Plaintiff alleges Berry and Glidden were acting as agents of PAR and CSXT's business, and, as a result, PAR and CSXT are responsible for Berry and Glidden's negligence, gross negligence, and willful, wanton, and reckless conduct. Similarly, Counts 8 and 12 allege PAR and CSXT are vicariously responsible for Berry and Glidden's negligence, grossly negligence, and willful, wanton, and reckless conduct.

As discussed above, Plaintiff plausibly alleges Berry and Glidden engaged in willful, wanton, and reckless conduct (Counts 3 and 6). As a result, Counts 7, 8, 11, and 12 survive to the extent they allege vicarious liability from Berry's and Glidden's willful, wanton, and reckless conduct. However, because Plaintiff's underlying tort claims of negligence and gross negligence do not survive, Counts 7, 8, 11, and 12 are dismissed to the extent they allege vicarious liability

---

maximum safety, but only one which would be safe to a person who exercises such minimum care as the circumstances reasonably indicate.'" (quoting Lyon v. Morphew, 678 N.E.2d 1306, 1310 (1997))).

from Berry and Glidden's alleged negligence and gross negligence. See Integrated Commc'ns & Techs., Inc. v. Hewlett-Packard Fin. Servs. Co., 573 F. Supp. 3d 513, 560 (D. Mass. 2021) (vicarious liability for the tortious conduct of others requires proof of underlying tort). As a result, Counts 7, 8, 11, and 12 are dismissed in part, and allowed in part.

## IV. CONCLUSION

For the foregoing reasons, Defendants' [Dkt. 42] Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. Counts 1, 2, 4, 5, and 9 are dismissed in their entirety. Counts 10 and 13 are dismissed to the extent they allege negligence and gross negligence against PAR and CSXT and survive to the extent they allege willful, wanton, and reckless conduct against PAR and CSXT. Counts 7, 8, 11, and 12 are also dismissed to the extent they allege vicarious liability against PAR and CSXT based on underlying tort claims of negligence and gross negligence and survive to the extent they allege vicarious liability based on underlying tort claims of willful, wanton, and reckless conduct. Counts 3 and 6 survive in their entirety.

**SO ORDERED.**

Dated: September 17, 2026

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge